Wilde, J.
We have taken time for the consideration of this case, not because we thought it entangled with much difficulty, but because we felt unwilling to give a hasty construction to a statute, which has relation to a subject of general interest and importance ; and which, although it has been in operation many years, has not been much discussed in our Courts of law. On this statute, therefore, we have bestowed considerable attention, and we have no remaining doubts, as to its construction.
The first section requires, among other things, that every town or district, containing two hundred families or householders, shall be provided with a grammar schoolmaster, of good morals, well instructed in the Latin, Greek, and English languages; and shall, in addition thereto, be provided with a schoolmaster or schoolmasters, to instruct children in the English language, for such term of time as shall be equivalent to twelve months for each of said schools in each year.
The fifth section provides that no person shall be employed as a grammar schoolmaster, unless he shall have received an education at some college, and before entering on the business of said school, shall produce satisfactory evidence thereof; or shall produce a certificate of a learned minister or ministers, that he is of competent skill in the Greek and Latin languages for the said purpose.
And the second section empowers towns to determine and define the limits of school districts,' for the accommodation of those inhabitants whose dispersed situation might render such a division expedient.
*122 [ * 145 ] * These are all the provisions which are applicable to the present case; and they seem to describe, with sufficient clearness, the duties of towps, in relation both to the regulation of their schools, and the qualifications of the schoolmasters they are permitted to employ. The question then is, whether the defendants have complied with the requisitions of the statute. To determine which, we must first decide what is necessary to constitute a grammar schoolmaster within the act.
It has been argued, that the character or denomination of a school must be determined by the qualifications of the master, and not by the nature of his contract with his employers ; and that the production of evidence, to the selectmen, of his learning and morals, is not indispensable.
This argument, however, cannot be supported against the express words of the statute. Doubtless, the qualifications of the master are of the first importance to the school; and if these are unexceptionable, it seems hard to say that the school would be illegally instituted, unless the certificates of such qualifications were exhibited to the selectmen,“in compliance with the law. But the words of the statute are express, and the meaning is too obvious to admit of a doubt. No person can be lawfully employed as a town schoolmaster, unless he first produce the certificates or evidence required by the statute. Such evidence is decisive as to the legality of the school, and can never afterwards be questioned. Nor can the want of it be supplied aliunde. It maybe regarded as equivalent to the license of the ordinary, required by the law of England; without which no person can there lawfully be employed to teach a grammar school, whatever may be his learning and other qualifications for such a ti ust.
Again, to constitute a grammar school, within the meaning of the statute, it must be duly regulated as to the admission of scholars ; and the master must be engaged to teach a school of that description. Now, none of the schools in Dedham wrere under [ * 146 ] the regulations prescribed * for grammar schools; nor is it pretended that the masters were engaged to teach any such schools. In most of the districts they were in no respect qualified as grammar schoolmasters ; and it is expressly admitted that all the schools in the town were under similar regulations. They must therefore be regarded in the same light, and as forming but one description of schools.
But there is another objection to the defence set up in this case. The schools required by the statute are to be maintained for the benefit of the whole town, as it is the wise policy of the law tc give all the inhabitants equal privileges, for the education of their *123 children in the public schools. Nor is it in the power of the majority to deprive the minority of this privilege. If, then, the schools in three of the districts are to be considered as grammar schools, and those in the other districts as of another description, the whole proceedings, of the town have been irregular; and it may well be doubted, whether the money of the town can be lawfully appropriated to the support of schools thus instituted. Every inhabitant of tho town has a right to participate in the benefits of both descriptions of schools ; and it is not competent for a town to establish a grammar school for the benefit of one part of the town, to the exclusion of the other; although the money raised for the support of schools may be, in other respects, fairly apportioned. If the whole of the money so raised by the defendants had been expended in three districts, no one would contend for the legality of such an appropriation. Yet the principle of the present case is the same. For the two descriptions of schools are to be considered as distinct and independent of each other. Both must be town schools, and not schools for the benefit of a part of the town only.
For these reasons, the Court are all of opinion that the motion for a new trial must be overruled.
As to the motion in arrest of judgment, there seems to be no ground for it. Misnomer is only matter of abatement,
* and is nota good cause for arrest, even in criminal [*147] prosecutions. But if it were, we are of opinion that the defendants are rightly named; and that the delinquency of the town is described with sufficient certainty.