## CARPENTER vs. THE STATE.

1. The omission of the clerk of the County Court to affix the seal of that court to the certificate of the election of a justice of the peace will not affect the validity of such election, or the rights of the justice as such magistrate.—See Rev. Stat., 1835, title, "Justices of the Peace," sec. 11, p. 345.

2. A *scire facias* issued against *Conrad* Carpenter, and others, his sureties, on a forfeited recognizance. The recognizance was conditioned for the appearance of *Coonrod* Carpenter, and signed *Conrad* Carpenter. Process was not served on Carpenter. *Held:* First, that if considered as a misnomer of the Christian name of Carpenter, the error was waived by his failing to plead the misnomer in abatement; second, that, by signing the recognizance, he admitted that he was the person therein named *Coonrod* Carpenter.—Rev. Stat., 1835, title, "Practice and Proceedings in Criminal Cases," art. 9, sec. 14, p. 501.

APPEAL from the Circuit Court of Montgomery county.

KIRTLEY, *for Appellants.*

### POINTS AND AUTHORITIES.

1. That Dade was not a justice of the peace, duly and legally commissioned and qualified as such, and therefore had not authority of law to take the recognizance on which the *scire facias* issued in this cause: and, in support of this point, I refer to Statutes of Mo., 345, sec. 11, 12, 13, 14.

2. That the recognizance was and is radically defective in the description of the alleged offence.—See 9 Mass. Rep., Cone *vs.* Dorony, 520; 16 Mass. Rep., 447, *Ibid.*; 17 Wend., 252, People *vs.* Blankman.

3. That the evidence offered by the State, and objected to by the defendant, was improperly admitted.

4. That the record and evidence offered and given on the part of the State at the hearing did warrant the finding of the first and second issues against the defendants. — 1 Alabama Rep., 119, Howie and Morrison *vs.* State.

BAY, *Attorney-General, for Appellee.*

### POINTS AND AUTHORITIES.

1. The demurrer to the third, fourth, and fifth pleas was properly sustained, because the pleas traverse immaterial allegations in the writ of *scire facias.*— 1 Chitty, 403, 644; Adair *vs.* The State, 1 Blackford, 200; McCarty *vs.* The State, *Ibid.*, 339; 10 Wend., 434.

2. The recognizance, when filed in the Circuit Court, became a record of that court, and the only question that could arise under the first plea was, whether the *scire facias* issued on this recognizance.—1 B. and A., 153.

3. The statute requiring the certificate of the election of the justice of the peace to be under the seal of the court in writing, and the omission of the clerk to affix

the seal thereto, cannot affect the validity of the election, or the rights of the magistrate. It was sufficient for the State to show that Dade publicly acted in the capacity of a justice of the peace: and the evidence offered by the defendants strengthen the legal presumption of the official character of Dade. The seal is no part of the commission, but merely evidence of its authenticity.—Roscoe's Crim. Ev., 6; 6 Peters, 352; Greenleaf on Ev., 94.

4. The defendant, Carpenter, has admitted, by signing the recognizance, that he is the person therein recognized. (Rev.Stat.,1835,title, "Practice and Proceedings in Criminal Cases, art. 9, sec. 14.) At all events, he should have pleaded the misnomer in abatement.—1 Bab. Ab., "Abatement, D.;" 2 *Ibid.*, "Error, K.;" 1 Chit. Crim. Law, 362–365.


TOMPKINS, *Judge, delivered the opinion of the Court.*

This is a proceeding, by *scire facias*, instituted by the State of Missouri against Conrad Carpenter, Joseph Parks, Frederick H. Dryden, and Thomas Dryden, requiring the said defendants to show cause why execution should not go against them for the sum of two thousand dollars, charged to be forfeited by them, by their failure to comply with the conditions of a recognizance by them entered into on the 28th day of July, 1842, before Lee M. Dade, a justice of the peace of said county. The recognizance sued on, as set out in the bill of exceptions, is in the following words, viz.:—

"Be it remembered, that on the 28th day of July, in the year 1842, Coonrod Carpenter, Joseph Parks, Frederick H. Dryden, and Thomas Dryden, personally appeared before me, Lee M. Dade, one of the justices of the peace in and for the county aforesaid, and jointly and severally acknowledged themselves to owe the State of Missouri the sum of two thousand dollars, to be levied of their goods and chattels, land and tenements, if default be made in the condition following. The condition of this recognizance is such, that if the above Coonrod Carpenter shall punctually be and appear before the Circuit Court, on the first day of the next term thereof, next to be holden in and for the county aforesaid, then and there to answer to a charge of manslaughter, and abide the judgment of the court, and not depart without leave, then this recognizance shall be void, otherwise it shall be and remain in full force and virtue in law.

(Signed)                                  " CONRAD CARPENTER,
                                          " FREDERICK H. DRYDEN,
                                          " THOMAS DRYDEN,
                                          " JOSEPH PARKS."

The writ of *scire facias* is preceded by a recital of the empannelling of a grand jury, and their names, and that the grand jury indicted Carpenter for the murder of a slave named Minerva, and that the defendants not appearing, their recognizance was forfeited. Then follows the *scire facias* itself, which, beginning with a whereas, recites, that on the oath of Joel Wheeler, Robert Dryden, John Sharp, and Frederick H. Dryden, the said justice Dade issued a warrant against Conrad Carpenter, stating, that whereas complaint had been made against him, upon the

oath of the persons above named, that the said Conrad Carpenter, late of the county aforesaid, did, on or about the 24th day of July, in the year 1842, in the county aforesaid, unlawfully whip Minerva, a colored girl, so as to cause her death, and commanding the constable of, &c., in said county, to take the said Carpenter, if he be found in said county, so that he, the said constable, should have the body of the said Carpenter, forthwith, before the said justice, to answer the said complaint, and be further dealt with according to law; and afterwards, on the 27th day of July, in the year 1842 aforesaid, the said Conrad Carpenter was arrested and brought before the said justice of the peace on said warrant, and the said justice considering that there was probable cause to believe that the said Conrad Carpenter, on the 24th day of July, 1842, and in said county, had committed manslaughter upon Minerva, a slave belonging to said Carpenter, required bail in the sum of two thousand dollars of him, and thereupon the said Conrad Carpenter and Joseph Parks, Frederick H. Dryden and Thomas Dryden, on the 28th day of July, in the year 1842, before the said justice of the peace, entered into a recognizance whereby they acknowledged themselves to owe to the State of Missouri the sum of two thousand dollars, to be levied of their goods and chattels, lands and tenements, if default should be made in the condition thereof, which condition is as follows : —

"The condition of the above recognizance is such, that if the above bound Coonrod Carpenter," meaning the said Conrad Carpenter, "shall personally be and appear before the Circuit Court on the first day of the next term thereof, to be holden in and for the county aforesaid, then and there to answer a charge of manslaughter, and abide the judgment of the court, and not depart without the leave of court, then this recognizance shall be null and void, otherwise it shall be and remain in full force and virtue in law: which recognizance was, on the 3d day of October, 1842, delivered to the clerk of said court, and now remains on file in his office; and afterwards, viz., at the next term of the Circuit Court in and for the said county of Montgomery, on the 3d day of October, 1842, and the grand jury for the State of Missouri empannelled and sworn, &c., found and brought in to said court an indictment against the said Conrad Carpenter for the murder of the said negro slave, named Minerva, &c.; and afterwards, on the 4th day of October, in the year 1842, and during the sitting of said court, the said Conrad Carpenter was called, upon his said recognizance, to appear in said court, to answer before the said court the charge contained and exhibited against him, in and by said indictment, to abide the judgment of the court in the premises, and not depart the court without leave, and came not, but then and there wholly failed to appear and answer the charge last aforesaid, and further, the said Conrad Carpenter then and there departed the said court without leave, &c., and the recognizance was forfeited." The conclusion was as usual. Carpenter was not found, but the writ was served on Parks, Frederick H. Dryden and Thomas Dryden.

The defendants pleaded that—

1. There was no such record.

2. That, at the time of taking the said recognizance, the said Dade was not a justice of the peace.

3. That, on said 27th July, 1842, a warrant was not issued upon the oaths of Joel Wheeler, Robert Dryden, &c., by said justice Dade.

4. That said justice Dade did not consider and adjudge that there was probable cause to believe that said Conrad Carpenter, on the said 24th day of July, &c., had committed manslaughter upon Minerva, a slave, &c.

6. For further plea, &c., as to so much of the said *scire facias* as charges that the said grand jury for Montgomery county, &c., found and brought into said court an indictment against the said Conrad Carpenter, for the murder of the said negro slave, Minerva, and that, by the order of said court, when, &c., the said Carpenter was three times called upon his said supposed recognizance, at, &c., to appear in said court to answer, &c., the charge contained and exhibited against him in and by said indictment, and to abide the judgment of the court in the premises, and not depart the court without leave, and that said Carpenter came not, but made default, and then and there failed to appear and answer to the said charge last aforesaid, and then and there departed without leave of the court; and the said defendants say, that, admitting that said indictment for said supposed murder was found and brought into court, as in said writ is alleged, and admitting that said Carpenter was then and there called and failed to appear, as in said writ is set out, said defendants rely, aver, and allege that said defendants had not, at or before the time last aforesaid, given or entered into any recognizance to the State of Missouri, nor did they then and there stand bound, by any recognizance, to be and appear in said Circuit Court of Montgomery county, at the said October term for the year 1842, to answer before said court the said charge exhibited against him in said indictment for said supposed murder, &c.

Issue was taken on the two first pleas, and the three last were demurred to, and the parties going to trial on the two first pleas, judgment was given for the State.

The first plea being that there was no such record as that set out in the declaration, and the second that Dade was not a justice of the peace, and the validity of the whole proceeding depending on the fact whether Dade was or was not a justice of the peace, that matter will be first inquired into.

The counsel for the defendant relies on the 11th, 12th, 13th, and 14th sections of the act of 1835, to provide for the election of justices of the peace. (Digest, 345.) The eleventh section requires the county courts, as soon as they ascertain who are elected to act as justices of the peace in their respective counties, to cause certificates thereof to be made out, and under the seal of the court, signed by the president, and witnessed by the clerk, &c.

Twelfth. The clerk shall endorse on the back of every certificate that the person for whom it is intended shall qualify according to law, within twenty days after the receipt of the same, and in default thereof such certificate shall be void.

Thirteenth. Every person who receives a certificate of election, as a justice of the peace, shall, within thirty days thereafter, and before entering upon the discharge of his duties, cause the same, together with the oath by this act required, endorsed thereon, to be recorded in the office of the clerk of the County Court, which shall be deemed an acceptance of such appointment; and in case of his

failing so to do, it shall be deemed a refusal thereof. The defect in the commission is, that it is not sealed; that is to say, that the certificate of the election has not been made out under the seal of the County Court, as required in the eleventh section.

The act does not declare it to be void if the seal be not annexed; as it does in case the justice fail to take the oath within twenty days, as required by the twelfth section. By the 14th section, it is declared, that a failure on the part of the person elected, to record his commission, and the oath thereon endorsed, for thirty days after the receipt thereof, shall be deemed a refusal to accept.

His own negligence only operates to produce an express legislative declaration of what shall render the commission void. By the territorial act of 21st January, 1815, p. 395 of the territorial laws, it was the duty of the Circuit Courts in the several counties in, &c., and of the clerk in vacation, subject to the confirmation or rejection of said court, to grant letters testamentary, and letters of administration, with or without any last will, &c.; and by the second section of the act of 20th January, 1816, all letters testamentary, and of administration, granted after the taking effect of that act, are required to be recorded before they are delivered to the parties by the clerk of the court granting the same, &c.

In the case of Carroll *vs.* Carn, 1 Mo. Rep., 161, this Court decided, that although no letters of administration had been issued, (and consequently they could not be recorded,) yet the entry of the grant of letters of administration on the record conferred on the grantor the rights, and also imposed on him the duties of administrator. Judge Cook, in stating the case, says, "The points presented for the consideration of this Court, and relied on for the reversal of the judgment of the Circuit Court, are, that the court erred in sustaining the demurrer to the plea of non-assumpsit, and also in refusing to exclude the record of the letters of administration offered in evidence by the plaintiffs. Those who desire to read what is said on that demurrer, can refer to the case. But as I can speak understandingly of this case, I will here say that Carroll's counsel did not expect to be able to prove anything for his client under that plea, nor did the counsel of Carn fear anything could be proved; but that plea was put in, and it was demurred to by an agreement betwixt the counsel, merely to get the court to decide whether the plea of non-assumpsit without an affidavit was good, under the second clause of the 23d section of the act to regulate judicial proceedings, p. 250 of Geyer's Digest. And it was privately agreed, that the party in whose favor the other point was decided should have judgment when the cause should be remanded to the Circuit Court. The court gave an opinion, rather elaborate, on the demurrer to the plea of non-assumpsit, and contented itself with one line on the other point, viz., the refusal of the Circuit Court to exclude the record evidence of the letters of administration. These are the words in which it expresses itself on that point: "On the other point we see no error in the record."

It was, in that case, made the duty of the clerk to record the letters of administration before he delivered them, and the consequence of neglect was, that they should not be received in evidence in any court of the territory. In the case of the justice's commission in this cause, no consequence of the neglect of the court

to seal that commission is declared by the law itself. As there was evidence on record that Carroll had been appointed administrator, so there is record evidence that the County Court had ascertained Dade to have been elected a justice of the peace: that court caused the certificate of election to be issued; it was signed by the president, and witnessed by the clerk; every other provision was complied with, but the court did not cause it to be issued under its seal. If this had happened by the negligence of Dade, there might be some reason for saying that the commission should be void, as it is declared to be, in case the newly elected person do not cause his commission to be recorded.

But, by the above-cited second section of the act of 1816, letters of administration were required to be recorded, under pain of not being received in evidence in any court of record in any county of the territory; and yet this Court held the grant itself was not void, and that the record of the grant might be read in evidence, although no letters had issued, and consequently there could be no record of them. The commission of Dade, then, it seems, ought to be held to be valid, although not having the seal of the court attached. The interest of the community requires such a construction, and the law does not in terms forbid it.

The second plea being disposed of, I come now to the first — That there is not any record of the said supposed recognizance remaining in said Montgomery Circuit Court, &c. The recognizance is sufficiently set out in the writ, so is the condition, and it is also averred in said writ, that Carpenter was called upon his recognizance to appear in said court, to answer before said court the charges exhibited against him in and by said indictment. It being thus averred that he was called to answer upon his recognizance, which recognizance had been immediately before set out; if the officer calling him did, in reality, call him to answer on an indictment for murder, he deserved very little at the hands of the State, and to that silly proclamation, if Carpenter had not before escaped, might be attributed his failure to answer. The probability is, that the officer knew his duty better. It was enough to call him on his recognizance, and the mention made here of the indictment for murder is a mere excrescence.

The defendants were, in law, bound to know that, the principal being held to bail for a species of homicide called manslaughter, the grand jury might well collect testimony which would authorize them to attach the crime of murder to that homicide. But the defendants contend, that the recognizance is radically defective in the description of the alleged offence, and to sustain this charge the defendants cite the Commonwealth *vs.* Downey, (*9 Mass.* Reports, 492.) The condition of the recognizance in that case is, that if the defendant shall prosecute an appeal from a judgment given against him in a municipal court holden, &c., for the sum of fifty dollars, and recognize in the sum of one hundred and fifty dollars for his being of good behavior for the three years, &c.

It was then averred that the recognizance was transmitted to the Supreme Judicial Court, at the term to which the defendant appealed, and was there duly entered of record. There was a demurrer filed to this proceeding, and the causes assigned were, first, that it does not appear that the said proceedings had before the municipal court on said indictment have been returned or certified to this Court,

or are of record here; second, that it does not appear that the proceedings on said indictment, before said municipal court, are the same judgment in the said recog‐ nizance mentioned; third, that it does not appear, by said recognizance, that the said judgment, therein specified to have been given against the said Thomas, was rendered in favor of the said Commonwealth, or of any other person. The court said, "a recognizance should recite the cause of its caption; it is also a well settled principle, that a *scire facias* can issue from no court, but one in the possession of the record upon which it issues. For these reasons the Common‐ wealth can take nothing by its writ."

The only record now before us is the recognizance on which this *scire facias* has issued, and it is averred that this recognizance was, and still is, in said court. I shall not notice several other cases cited, as I do not conceive they are in any manner relevant. But the main objection to this record is, that in the recognizance the name of the principal is written Coonrod, and that he is in the whole proceed‐ ing called Conrad, and that he himself has signed his own name Conrad. Let it be admitted, that we cannot judicially know that Coonrod is the true pronunciation of this name, which Carpenter has written Conrad, are we equally precluded from noticing judicially that there are two classes of words in the English language, in the one of which the single letter "O" assumes the sound of the double letter "O," in moon, coon, &c., and in the other, the letter "A" claims the sound of the short "O," in the words nod, rod, &c.? so that, by giving to the two vowels, "O" and "A," in the baptismal name of Carpenter, the sounds of each of those letters in its respective class above-cited, we have the name Conrad pronounced Coonrod, as in the recognizance it is written. But suppose again, that we cannot judicially know that these letters "O" and "A" are entitled to the sounds above- mentioned, in any words whatever; we are then bound to take judicial notice that Coonrod is a misnomer of Conrad, and as such that it ought to have been pleaded in abatement by himself, if any advantage were sought to be obtained from the mistake.—1 Chitty's Criminal Law, pp. 362–365, which refers to the following passages in Bacon Abridg., where it is said—"Misnomer is a good plea in abate‐ ment," &c.; and again, "but though a defendant may, by pleading in abatement, take advantage of a misnomer, when there is a mistake in the writ or declaration, as to the name of baptism or surname, yet in such a plea he must set forth his right name, so as to give the plaintiff a better writ." And "one defendant cannot plead misnomer of his companion; for the other defendant may admit himself to be the person in the writ." "The defendant, though his name be mistaken, is not obliged to take notice of it, and, therefore, if he be impleaded by a wrong name, and afterwards be impleaded by his right name, he may plead in bar the former judgment, and aver that is '*una et eadem persona.*'"—1 Bacon Ab., letter D., in the title, "Abatement." In 1 Chitty's Crim. Law, it is said, "And the proper time to take advantage of it (misnomer) is upon arraignment, when he is called on to answer." And in 2 Bacon's Ab., title, "Error," letter K., 5, we find, that "a man shall never assign that for error which he might have pleaded in abatement, for it shall be accounted his folly to neglect the time of taking that exception."

In this cause, Carpenter and his sureties are called to be recognized; he hears his name called and pronounced Coonrod Carpenter, as it is written in the recognizance; and when, in compliance with the provisions of the fourteenth section of the ninth article of the act to regulate the practice and proceedings in criminal cases, he subscribes this recognizance, (page 501 of the Digest of 1835,) with his properly written name, Conrad Carpenter, he as much admits the name Coonrod, written by the justice in the condition of the recognizance, to be the same, and thereby precludes himself from assigning it for error, as if he had pleaded not guilty, or had been convicted on an indictment in which he was charged as Coonrod Carpenter; and if his co-defendants cannot plead a misnomer for him, as we have seen above, (1 Bacon, title, "Abatement," letter D,) much less can they now, when the judgment of the court has been rendered against them, come in and assign that for error, which, we are told above, he himself could not assign after verdict, having neglected to plead it in abatement. But whatever error might have been committed against Carpenter himself, had he been a party to this proceeding, the present defendants can lay claim to no benefit therefrom; for, according to the above-recited rules of pleading, they have, by each of their five pleas in bar, admitted that their principal was rightly named in the recognizance; and he certainly admitted it when he subscribed his name to the recognizance, and if he fraudulently made that admission, they are participators in that fraud.

Demurrers were filed and sustained to the third, fourth, and fifth pleas, and it seems they were correctly sustained; for if, as stated in those two first pleas, the justice of the peace acted without due deliberation, and thereby oppressed these men, he subjected himself thereby to a prosecution on the sixteenth section of the sixth article of the act concerning crimes and punishments, and there that matter must end; for the abuse of his authority by the justice could not be received as evidence of the innocence of the principal in the recognizance, nor would it relieve him of the obligation to appear and answer.

The fifth plea tenders an issue equally immaterial with the third and fourth. Carpenter ought to have appeared to answer when called on his recognizance. He had been called, as appears of record, for such purpose; and if the officer making the proclamation unwittingly added any thing about the indictment, that was an injury to the State, by giving him such notice as to apprize him of his danger, and enable him to escape, but it did not either avoid or vitiate his recognizance.

The judgment must, therefore, be affirmed, Judge Napton concurring.

SCOTT, J., *dissenting.*