KRONSKI v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Justices' Courts**: COMPLAINT: RAILROADS: DAMAGE TO CATTLE. A complaint in a justice's court alleged that plaintiff's cow was killed by a railroad company at a point on its road where by law it was bound to maintain a sufficient fence, and that the company had failed and neglected to maintain such fence at the point where the cow got upon the track and was killed. *Held*, that after verdict these allegations would be deemed to aver sufficiently that the killing was occasioned by the failure to fence.

2. ———: ———: JEOFAILS. Where the entire record showed that the plaintiff's cow was killed in the township of the justice before whom suit was brought under section 809, Revised Statutes 1879, the want of a specific allegation of this fact in the complaint was held to be cured by defendant's appearance in the circuit court and its participation in a trial upon the merits.

3. **Defective Service:** WAIVER. A defect in the service of a summons is waived by appearance and submission to the trial of the cause upon its merits, notwithstanding a motion to dismiss because of such defect be first made and overruled.

4. **Justices' Courts:** JURISDICTION: PRIMA FACIE EVIDENCE. Taking an appeal from a justice of the peace having in his possession the docket of the justice before whom the suit was brought, is *prima facie* evidence of a transfer of jurisdiction from the one justice to the other.

5. ———: MISNOMER: JUDGMENT. Service of process in favor of the right party by a wrong name, is good, and a judgment in favor of the right party by his proper name will after trial cure a misnomer in the complaint, summons or prior proceedings.

*Appeal from Lafayette Circuit Court.*—HON. W. T. WOOD, Judge.

AFFIRMED.

*Thos. J. Portis* and *E. A. Andrews* for appellant.

Under the statute a failure to fence its road does not create an absolute liability against a railroad company. It is only where such failure to fence has occasioned or caused the damage. This fact is jurisdictional. It must be alleged

in the complaint, and there must be some evidence tending to prove it. *Curry v. R'y Co.*, 43 Wis. 665; *Lawrence v. R'y Co.*, 42 Wis. 322. The return of the constable did not give the court jurisdiction over the defendant. *Lake Shore & M. S. R'y Co. v. Hunt*, 39 Mich. 469. The records of the county court, or at least the justice's commission, was the only evidence to show a transfer of jurisdiction. Kronski and Krinshee are not *idem sonans*, and defendant appealed from a judgment in favor of the former in a case where the justice's transcript does not show any jurisdiction to render such a judgment, and the suit should have been dismissed in the circuit court upon defendant's motion. *Robson v. Thomas*, 55 Mo. 581; *State v. Hardy*, 21 Mo. 498; *Cato v. Hutson*, 7 Mo. 142; *State v. Curran*, 18 Mo. 320.

*Rathbun & Shewalter* for respondent.

WINSLOW, C.—This is an action for damages under the 43rd section of the Corporation Act, for killing plaintiff's cow, valued in the complaint at $40. The complaint was originally filed before James W. Callahan, a justice of the peace of Lafayette county, October 25th, 1878, and the plaintiff is therein styled Martin Krinshee; and, in the summons, which was issued by Callahan, the plaintiff is also called Martin Krinshee; in all of the other pleadings and records in the case, including those filed by the defendant, he is designated as Martin Kronski. Appellant made this variance a ground for a motion to dismiss the suit in the circuit court, but did not otherwise raise it, and now insists on it for error in this court. At the August election, 1878, Franklin K. Tutt was elected as the successor of Callahan, and became the custodian of his docket; and the transcripts were made out and returned by him; in fact, all the proceedings were conducted before him, after the issuance and return of the summons. Judgment by default was rendered against defendant by the justice, from which it appealed to the circuit court.

The complaint in the case is as follows: Plaintiff states that defendant is an incorporated company under the laws of this State, and that on the 2nd day of October, 1878, at Lexington township, in Lafayette county, at a point on the track of defendant's railroad in said township, where the same passed along and adjoining inclosed and cultivated fields and uninclosed lands, and not at a public or private crossing of said road, the defendant, by its agents and servants running its locomotive and train of cars, ran the same upon and over a milk cow, property of plaintiff, of the value of $40, and thereby killed said cow; that defendant had failed and neglected to erect or maintain good or sufficient fences on the sides of its road at the point where said cow got upon the track of said road and was killed, and that by reason of said killing and by virtue of the 43rd section of chapter 63 of General Statutes of Missouri, and as amended by laws of 1877, as per Meyer's supplement, page 74, section 43. Wherefore plaintiff asks judgment for said sum of $40, the value of said cow, and that upon final judgment the same be doubled as provided by statute.

The summons is in the usual form, and no complaint is made of it. The return of the constable is as follows:

"Executed the within writ on the within named Missouri Pacific Railway Company, by reading the same to C. Ben. Russell, agent for said company, in the office of said company, on the 25th day of October, 1878, in Lexington township, Lafayette county, Missouri."

In the circuit court defendant filed a motion to dismiss the suit, pending which plaintiff procured an order on the justice to file an amended return, which was filed; and, thereupon, the motion to dismiss was overruled. The amended transcript was intended to show the succession of Tutt to the docket of Callahan, and contained nothing additional. The following is the motion:

"Now comes the defendant by its attorney, appearing specially and for this purpose only, and objects to the

jurisdiction of this court in this cause, and moves the court to dismiss this suit for the following reasons: (1) Because the justice of the peace did not have, nor has this court, jurisdiction of defendant. (2) Because the justice of the peace before whom this cause was tried, did not have, nor has this court, jurisdiction of the subject matter of this suit. (4) Because neither the transcript nor the record of the justice of the peace before whom this cause was tried, shows that plaintiff's animal was injured within the township of which he was a justice of the peace. (4) Because the complaint filed before J. M. Callahan, J. P., was made by one Martin Krinshee, and the transcript of the judgment rendered before F. K. Tutt, J. P., shows that the judgment was in favor of Martin Kronski. (5) Because the transcript herein does not show how the jurisdiction of a cause pending before one J. M. Callahan, J. P., was transferred to one F. K. Tutt, J. P., or Frank K. Tutt, J. P."

The amended transcript filed by the justice under the order of the court contained this statement as to the succession, which was all the evidence on the subject, except the fact that Tutt had possession of the docket of Callahan, finished the case, and made the return of the transcript to the circuit court: "November 8th, 1878. At the general election held on the 5th day of November, 1878, the undersigned was duly elected justice of the peace for Lexington township, Lafayette county, Missouri, and having duly qualified as such, the docket of James M. Callahan, with the above cause, was turned over to me as his (James M. Callahan's) successor in office."

A trial upon the merits was then had before the court without a jury. The plaintiff, to sustain the issues on his part, offered evidence tending to prove all the material allegations of the petition; no evidence was offered on the part of defendant. The court thereupon found the issues for the plaintiff, assessed his damages at $30, and rendered a judgment in his favor for $60.

The record of the judgment rendered in the circuit court recites the appearance of the parties thus: "Now, at this day, come the parties aforesaid, by their attorneys, and this cause is now taken up and submitted to the court for trial, a jury being waived," etc. Then follows a hearing on the merits, a finding for plaintiff, a motion to double the damages, and the recital that "the defendant, by her attorney, thereupon filed her objections to the damages being doubled, which said objections are now submitted to the court, and being seen and fully heard, the said objections are overruled." Then follows the judgment for double damages, to reverse which, the defendant has prosecuted this appeal.

Appellant maintains that the complaint is insufficient, because it fails to state that the injury was occasioned by the failure to erect and maintain the fences. The complaint alleges, "that the defendant had failed and neglected to erect or maintain good or sufficient fences on the sides of its road, at the point where said cow got upon the track of said road and was killed." The inference from this statement, in connection with the preceding allegations that the injury occurred at a point on the road where the defendant was bound to fence, is almost irresistible that the injury was occasioned by the failure to fence. Complaints under the same section of the statute containing similar allegations, some of them less perspicuous, have been held sufficient, after verdict, by several recent decisions of this court; and, under those cases, this one must be held good. *Edwards v. R. R. Co.*, 74 Mo. 117; *Bowen v. R. R. Co.*, 75 Mo. 426; *Belcher v. R. R. Co.*, 75 Mo. 514.

1. JUSTICES' COURTS: complaint: railroads: damage to cattle.

The second point insisted on by appellant is, that "the complaint does not allege that the animal was killed or injured in the justice's township." As to this point, nothing further is said by counsel than the declaration that "no argument upon this point is necessary." We gather from the record, however, that

2. _____ : _____ : jeofails.

the real objection is, that the complaint does not show that the justice was a justice of the township in which the animal was killed, but only a justice of the peace of the county. The complaint alleges that the injury occurred in Lexington township; the summons describes the justice as "a justice of the peace of Lexington township, in the county of Lafayette," and commands the defendant to appear before him as such; the summons was directed "to the constable of Lexington township," and is returned as served in that township; the judgment was rendered in that township; the amended transcript recites that the justice who rendered the judgment " was duly elected justice of the peace for Lexington township, Lafayette county, Missouri," and having duly qualified, the docket of Callahan, with this case, was turned over to him; he certifies the transcript as "justice of the peace within and for the township of Lexington, in the county of Lafayette and State of Missouri;" and the defendant appeared before him and appealed.

The statute in force at that time, gave justices jurisdiction in these cases, without regard to amount, when the injury occurred within their respective townships. It is not denied but what the injury occurred in the township of which Tutt was justice, but the complaint is that there was no proper venue to show that fact.

Defendant appeared to the merits in the circuit court, submitted to a trial of the cause, and obtained the full benefit of all the merits there were in its case. Had the suit been commenced in the circuit court, where technical rules of pleading prevail, the judgment on the merits would have precluded it from taking advantage of the " want of any venue, if the cause was tried in the proper county." R. S. 1879, § 3582. How much more force there is in applying this rule to this case, which was commenced in a court where technical rules of pleading are ignored. The record amply shows that the justice had jurisdiction under the statute, the defendant has had the benefit of a

trial on the merits, the judgment is sufficient to protect it against another suit for the same injury, so far as this objection is concerned, and we cannot understand how the defendant can be injured by the want of a proper venue to the complaint. The objection arises as one of pleading, not of fact, and is too technical to warrant the reversal of the judgment, when it can serve no other purpose than to permit the complaint to be amended. The objection was cured by the verdict; the entire record showing that the justice had jurisdiction.

The third point insisted on by appellant is, that " the return of the constable did not give the court jurisdiction over the defendant." This, if true, could only relate to jurisdiction of the person, which may be waived. The defendant appeared on the merits, and submitted to a trial of the cause. This was a waiver of any defect in the service of the summons. *Delinger v. Higgins*, 26 Mo. 180. Numerous cases might be cited to the same effect. True, the appellant filed its motion to dismiss, which was overruled, and exceptions duly saved thereto; but the rule to be deduced from the cases is, that there should have been no further appearance, in order to secure the benefit of the objection. It could not consistently appear and save exceptions to the jurisdiction and then proceed with the trial of the cause in a court possessing no jurisdiction over the person, when, by the very act of appearing further, the requisite jurisdiction was conferred. A party must either appear at the trial and abide the consequences or not appear at all. *Tower v. Moore*, 52 Mo. 118; *Griffin v. Van Meter*, 53 Mo. 430; *Smith v. Monks*, 55 Mo. 106; *Rippstein v. Ins. Co.*, 57 Mo. 86; *Huff v. Shepard*, 58 Mo. 241; *Peters v. R. R. Co.*, 59 Mo. 406; *Hulett v. Nugent*, 71 Mo. 131. Besides, the motion to dismiss only states this ground : " Because the justice did not have, nor has this court, jurisdiction of the defendant." The specific grounds are not shown, and it is not clear that this particular objection was raised below.

3. DEFECTIVE SERVICE : waiver.

The fourth point insisted on by appellant is, that it does not appear that the jurisdiction of the case was trans-

**4. JUSTICES'COURTS: jurisdiction: prima facie evidence.** ferred from Callahan to Tutt. Callahan's docket was in the possession of Tutt, the defendant appeared before him and took the appeal, finding no difficulty in tracing up the docket for that purpose, and he certified the transcript on the appeal. The presumption is, that he was in the lawful possession of the docket. *Linderman v. Edson*, 25 Mo. 105. If the facts were otherwise, the defendant should have made them a matter of defense.

The last point insisted on by appellant is, that the justice's transcript shows a complaint in the name of Krin-

**5. ——: MISNOMER: judgment.** shee, while the judgment was rendered in favor of Kronski, and it is argued that unless the names are *idem sonans*, the defendant appealed from a judgment rendered without jurisdiction, and the circuit court should have sustained its motion to dismiss. The complaint was as much the foundation of the action in the circuit court, where the trial was *de novo*, as before the justice, and the circuit court rendered precisely the same judgment as the justice. No objections were saved to this action of the circuit court, except in overruling the motion to dismiss, and the only question is as to the propriety of overruling the motion. There is no question but what Kronski was the real party injured, and no pretense that Krinshee had any connection with the injury. There was simply a misnomer, which was corrected on the records, and the case, thereafter, proceeded to judgment in both courts in the name of the proper party. Defendant conformed to this amendment by entitling all its papers, even the motion to dismiss, in the name of Kronski. It failed to appear before the justice and insist upon the error, and went to trial on the merits in the circuit court, and submitted to a judgment in the name of Kronski, without undertaking to show that he was not the proper party. Service of process on the right party by a wrong name is

24—77

a good service, and gives the court jurisdiction. For equally strong reasons, service in favor of the right party by the wrong name is good.

These matters may be amended and the judgment taken in the proper name. If a party, served by the wrong name, fails to appear and make the defense, or submits to a judgment by the wrong name, the judgment will bind him as effectually as though rendered in the right name. *Parry v. Woodson*, 33 Mo. 347; *Weber v. Ebling*, 2 Mo. App. 15. The converse is true as applied to this case, and both plaintiff and defendant are bound by the judgment. Formerly, the rule required misnomer to be taken advantage of in abatement. *Thompson v. Elliott*, 5 Mo. 118; *Carpenter v. State*, 8 Mo. 291; 1 Chitty Plead., (16 Am. Ed.) 265, 266. The defect could have been cured by amendment, after judgment, in affirmance of the judgment. R. S. 1879, § 3570. It was cured by the verdict, the statute treating the proper amendment as having been made. R. S. 1879, § 3582. It furnished no ground for dismissing the case, and the circuit court did not err in that respect; it does not affect the jurisdiction so as to authorize its consideration on the face of the record, and it is not otherwise presented to this court. 1 Chitty Plead., (16 Am. Ed.) 266. The right party has recovered a judgment in his proper name, defendant has submitted to that recovery without suggesting the contrary, and we can imagine no reason why it should be reversed. The judgment should be affirmed. All concur.