THE PEOPLE OF THE STATE OF NEW YORK ex rel. OTTO A. NUBELL, APPELLANT, v. THOMAS BYRNES AND OTHERS, RESPONDENTS.

*Fugitive from justice — duty of the governor upon the presentation of the demand and a copy of the indictment — he cannot pass upon the validity of the indictment — right of the person arrested to compel his custodian to prove his identity with the person indicted.*

Where a demand is made upon the governor of this State by the governor of another State for the surrender of a fugitive from justice, and such demand is accompanied by a copy of an indictment found in such other State charging the person demanded with having committed treason, felony or other crime,

and the same is certified as authentic by the governor making the demand, it is the duty of the governor of this State to issue a warrant for the arrest of the person demanded, and he has no authority to determine whether or not the charge is well founded, or whether or not the indictment is defective.

*People ex rel. Jourdan* v. *Donohue* (84 N. Y., 438) followed; *People ex rel. Lawrence* v. *Brady* (56 N. Y., 183) distinguished.

The fact that the indictment, of which a copy is annexed to the requisition, fails to give the full christian names of the person demanded, and only states the initial letters thereof, does not justify a refusal to issue the warrant by the governor, or a discharge of the person demanded by the court, after he has been arrested thereunder.

But where a person has been arrested upon a warrant issued by the governor upon a requisition founded upon such an indictment, and in the warrant the initials only of the two first names of the alleged fugitive are given, such person is entitled upon the return to a writ of *habeas corpus* to deny that he is the person mentioned in the warrant; and upon such denial being made the burden of proving that he is the same person is thrown upon the party seeking to detain him in custody.

APPEAL from an order made at a Special Term dismissing a writ of *habeas corpus* and *certiorari*, and remanding the relator to the custody of the respondent.

*Edward P. Wilder*, for the appellant.

*Peter B. Olney*, district attorney, for the respondents.

DANIELS, J. :

The relator was arrested upon a warrant, issued by the governor in conformity to a requisition made upon him by the governor of the State of Illinois, for the arrest and return to that State of O. A. Nubell, who there stood charged with the crime of conspiracy committed in the county of Cook in the State of Illinois. The warrant recited that it had been represented by the governor of the State of Illinois that Nubell had been so charged; that he had fled from justice in that State and taken refuge in the State of New York, and that the representations were accompanied by an indictment and affidavit, whereby the said O. A. Nubell is charged with the said crime, and with having fled from said State and taken refuge in the State of New York, which were certified by the governor of Illinois to be duly authenticated. It was upon these representations and evidence that the warrant was issued by the executive of this State, upon which the relator was arrested and held. At the

instance of his counsel, alleging the arrest and detention to be illegal, a writ of *habeas corpus* was issued and the relator brought before one of the justices of this court. A return was made to the writ setting forth that he was held in custody under the warrant issued by the governor of the State of New York. To this return a demurrer was interposed, which was overruled by the justice before whom the hearing took place, and the writ itself was dismissed, and it was from the order dismissing the writ that the appeal has been taken by the relator.

In support of the appeal it has been objected that the indictment itself set forth no offense, and that it was fatally defective by reason of the fact that it was presented against Nubell by the initial letters of his christian names without setting forth either one of such names. What the statements in the indictment may have been, describing the charge of conspiracy contained in it, were not made a part of the proof, for the copy of the indictment itself was not produced, but remained in the custody of the executive of the State, and all that can be known of its contents must be derived from the statements in the warrant, whose recitals set forth the fact that Nubell did stand charged with the crime of conspiracy, and that he was so charged by an indictment certified by the governor of Illinois to be duly authenticated. What the particular nature of the conspiracy was, is not set forth, but it is to be inferred from the statements contained in the warrant, that the charge constituted a crime under the laws of the State of Illinois, and on evidence tending to prove the commission of the crime, the grand jury presenting the indictment, had concluded that the crime charged had been committed by Nubell the person named in the indictment. It is to be inferred from these facts that the case had been presented to the grand jury and the evidence produced in support of the charge had been considered, that they had concluded that a crime had probably been committed, and had embodied the result of their conviction upon this subject in the indictment, legally and formally charging Nubell with the commission of a crime under the laws of the State of Illinois. What those laws may be upon the subject, has in no way been made to appear. Neither was it necessary that their provisions should be shown to support the application for the arrest and return of the person charged.

Neither the Constitution nor the act of congress under which the proceedings have been taken, require that those laws shall be brought to the attention of the authorities of the State in which the accused person may have taken refuge.

These are not subjects which have been committed to the consideration of the authorities of the State, but are subjects necessarily committed to the consideration and disposition of the judicial authorities of the State in which the indictment has been found.

This was clearly the design and intention of the Constitution of the United States, and of the act of congress enacted to carry the provision made upon this subject into practical effect. What the Constitution has required, and all that it has required, to authorize proceedings of this description, is that the person proceeded against, shall be charged in another State with treason, felony, or other crime, and that he shall have fled from justice, and shall be found in the other State. In these events it has been made imperative that the person charged shall on demand of the executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the crime. (Const. U. S., art. 4, § 2, sub. 3.) This provision does not confer upon the authorities of the State in which the person may be found the power to try or determine the question whether the charge may have been legally well founded or not. But that was left to be determined by the authorities of the State having jurisdiction of the crime. All that this provision has required to authorize the return of the alleged fugitive is, that he shall be the person who has been charged, and that a criminal charge shall have been made against him. When these facts may be made to appear, then on demand of the executive authority of the State from which the person has fled, the Constitution has declared that he shall be delivered up to be removed to the State having jurisdiction of the crime. And effect was given to this provision of the Constitution by an early enactment of congress for that purpose. (1 U. S. Statutes at Large, 302). And since then the same enactment has been inserted as section 5278 in the United States Revised Statutes. By this section it has been enacted that "whenever the executive authority of any State or territory demands any person as a fugitive from justice, of the executive authority of any State or territory to which such person has fled, and produces a copy of an indict-

ment found, or an affidavit made, before a magistrate of any State or territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor, or chief magistrate of the State or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or territory to which such person has fled, to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. "

This section was enacted in such terms as to require the executive of the State, in which the alleged fugitive may have taken refuge, to cause him to be arrested and secured, upon the criminal charge being authenticated by a copy of the indictment which has been found.

That is all the evidence of the crime which the executive under the law has the right to demand. When the copy of the indictment certified to be authentic by the governor of the State from whence the person charged is shown to have fled, is presented, it is made the absolute duty of the executive to whom this proof shall be made, to cause the arrest of the individual so charged.

He is vested with no authority to examine into the charge, or the sufficiency of the indictment, but has been required to act solely upon the facts; that the charge has been embodied in the indictment found by the constituted authorities, and a copy of the indictment has been presented to him properly authenticated. This subject was considered by the Supreme Court of the United States, *In the Matter of Commonwealth of Kentucky* v. *William Dennison, Governor of the State of Ohio* (24 How. [U. S.], 66). The charge there was, as the indictment set it forth, that Willis Lago had committed a crime by assisting a slave to escape from the State of Kentucky. The accused was alleged to have fled to and taken refuge within the State of Ohio, and the executive of the State of Kentucky demanded his extradition and return from the governor of the State of Ohio. This was not deemed to set forth a criminal offense as the law was understood in the State of Ohio, and an order or direction for the removal of the accused and his return to the

State of Kentucky was refused. An application was thereupon made to the Supreme Court requiring the governor of the State of Ohio to show cause why a *mandamus* should not be issued, commanding him to cause the accused to be delivered up and removed to the State of Kentucky, having jurisdiction over the crime with which he had been charged. The order was refused for the reason that the court did not consider its jurisdiction to be so extended, as to require performance of this duty through the means of the writ of *mandamus*. But in the considerations of the case the chief justice, in his opinion, declared the view of the court to be that the duty had been imposed upon the executive of the State of Ohio under the Constitution and the act of congress, to cause the arrest and return of the fugitive. Upon this subject it was said that, " it will be observed that the judicial acts which are necessary to authorize the demand are plainly specified in the act of congress ; and the certificate of the Executive authority is made conclusive as to their verity, when presented to the Executive of the State where the fugitive is found. He has no right to look behind them, or to question them, or to look into the character of the crime specified in this judicial proceeding.

" The duty which he is to perform is, as we have already said, merely ministerial — that is, to cause the party to be arrested and delivered to the agent or authority of the State where the crime was committed. It is said in the argument that the Executive officer upon whom this demand is made, must have a discretionary executive power, because he must inquire and decide who is the person demanded. But this certainly is not a discretionary duty upon which he is to exercise any judgment, but is a mere ministerial duty — that is, to do the act required to be done by him, and such as every marshal and sheriff must perform when process either criminal or civil is placed in his hands to be served on the person named in it. And it never has been supposed that this duty involved any discretionary power, or made him anything more than a mere ministerial officer ; and such is the position and character of the Executive of the State under this law, when the demand is made upon him, and the requisite evidence produced. The Governor has only to issue his warrant to an agent or officer to arrest the party named in the demand." (Id., 106, 107.)

These views are clearly in accordance with the language of the Constitution and the act of congress, and they deprive the executive of all discretion over the subject committed in this manner to his action. When the indictment has been found charging a criminal offense, and that has been certified to the executive of the State to which the fugitive is shown to have fled, the imperative duty is at once created to cause his arrest and his return ; and its performance cannot be declined because the executive on whom the demand may be made, may consider the criminal charge not to be well founded or not to have been stated with the clearness or precision required by the law or practice of his own State. Substantially the same was the view of the Court of Appeals of this State in *People ex. rel. Jourdan* v. *Donahue* (84 N. Y., 438). A somewhat different course was sanctioned and followed in *People ex rel. Lawrence* v. *Brady* (56 N. Y., 183), where the person charged was relieved from his arrest by *habeas corpus* practically upon the ground that the facts contained in the affidavits were not sufficient to create a crime as the law had been understood and administered in this State. But as that case proceeded simply upon the effect of the affidavits produced, it may be regarded as distinguishable from these other authorities. It certainly does not require, and would not justify a refusal to exercise the authority provided for, simply because the courts of this State, or the executive himself, might consider that the conspiracy charged by the indictment was not a criminal offense. Whether it may be or not, must depend upon the laws of the State of Illinois, under which the indictment has been found, and the administration of those laws by its tribunals.

The proceeding has also been resisted as unlawful because of the omission to give the christian names of the person charged with the offense in the indictment. But the courts of this State would not be justified in discharging the person from arrest on account of this omission. It may be a fully authorized mode of proceeding under the laws of the State of Illinois to charge a person with the commission of a crime in this manner. The presumption is in favor of the regularity of the indictment. It has so far passed the ordeal of the authorities of the State, and been acted upon and accepted in this form, and these acts are evidence of its regularity. It is not for the authorities of this State to determine the manner

in which the State of Illinois shall conduct its legal proceedings. That is a matter committed entirely to the authorities of that State. Upon this subject it was said in *Commonwealth of Kentucky* v. *Denison* (*supra*, 107): "Kentucky has an undoubted right to regulate the forms of pleading and process in her own courts, in criminal as well as civil cases, and is not bound to conform to those of any other State. And whether the charge against Lago is legally and sufficiently laid in this indictment according to the laws of Kentucky, is a judicial question to be decided by the courts of the State, and not by the Executive authority of the State of Ohio."

It may possibly be that this was an irregular mode of proceeding, but whether it was or not was not for the executive of this State to decide, neither has its courts authority to review that point. For as the indictment has been found, and properly certified, as the facts are stated in the warrant, that is all that can be required under the Constitution and the statute to authorize the arrest and return of the person charged, by the courts of this State.

An indictment is not necessarily to be declared inoperative, or void, even under the strict rules of the common law, because of its omission to designate the individual charged by the full christian name.

He may be indicted, as the accused has been in this instance, by giving the initials of his christian name, and upon such an indictment he may be legally convicted and punishe l.

This was held by the Court of Appeals of South Carolina, in *City Council* v. *King* (4 McCord, 487), where the court held the remedy of the accused to be that only of a plea in abatement. And if he failed to take the objection in that manner, that his right to insist upon it would afterwards be waived. A similiar ruling was made in *Smith* v. *State* (8 Ohio, 294). There the accused was named in the indictment W. E. Smith, and it was held that he could not object to the informality after pleading not guilty.

In the course of the opinion of Wood, J., it was said: "In 2 Hawkins' C. 23, § 125, it is said, if there be no addition, or a wrong one, the defendant can take advantage of it by plea in abatement only, and Hawkins is sustained by 1st Siderfine, page 247, *Rex* v. *Warren*, and by 2 Inst., 670; and it is further said, if he pleads over he thereby waives all objections to the indictment on that account.

So if there be no christian name, or a wrong one, or no surname, or a wrong one, the defendant can take advantage of it by plea in abatement only, and if he plead over, he waives the objection." (Id., 276.) And the same general principle was declared in *Commonwealth* v. *Dedham* (16 Mass., 141, 146), *State* v. *Burnell* (29 Wis., 435, 438), and it was also considered to be the only manner in which a misnomer could be taken advantage of in *Salisbury* v. *Gillett* (3 Ill. [2 Scam.], 290) and in *Carpenter* v. *State* (8 Mo., 291.)

And that was the course of practice followed in *Gerrish* v. *State* (53 Ala., 476). The other cases relied upon in support of the appeal decided by the Supreme Court of the State of Illinois, are·in no respect at variance with this practice. Where the party sued or proceeded against is misnamed, or his name is defectively given, the mode prescribed for taking advantage of the defect is by plea or answer; and in reply to that it may be alleged and shown that the party has usually designated himself by the name in which he may have been charged, and that will form a legal answer to the objection. (*City Council* v. *King, supra,* 489; 2 Hale, 238.) What was urged and said upon this subject on the motion to quash the indictment against Dorsey forms no substantial exception to this rule, for the proceedings there were wholly before the court in which the indictment was pending, as it of course would be, if it were put in a more formal shape by plea in abatement. In either case the tribunal to correct the informality, is that in which the indictment shall be pending. It appertains to its proper jurisdiction over the subject matter of the case, and cannot be a legal ground for the discharge of the accused from arrest in a proceeding of this character. That results not only from the authorities but also from the Constitution and laws of the United States prescribing and regulating this mode of proceeding. They have reserved no such authority either to the executive or the tribunals of this State. But when the indictment has been found, although it might be regarded as defective as the criminal law is administered in this State, the executive is required to act upon it when a copy properly authenticated has been presented to him, leaving it, as the law clearly does, to the courts of the other State to determine the legal effect or regularity of the proceedings. This intent is further manifest by section 5279 of the United States Revised Statutes. For

it is provided that "any agent so appointed who receives the fugitive into his custody shall be empowered to transport him to the State or territory from which he has fled. And every person who by force sets at liberty or rescues the fugitive from such agent, while so transporting him, shall be fined not more than $500, or imprisoned not more than one year." The law has created a specific and well defined proceeding by which the provision of the Constitution on this subject is to be carried into effect; and when the provisions of the Federal statute appear to have been formally complied with, the courts of this State are not authorized to interpose and release the person arrested because their views, or mode of criminal procedure, may not have been complied with in the State in which the indictment has been found. The proceeding is wholly statutory, and when the provisions of the statute have been observed, the governor is imperatively required to cause the arrest of the person charged and deliver him up to be returned to the State in which the criminal charge may be pending against him. And no court has the power to interfere and prevent the exercise of this authority, when the steps required to be taken have been followed in the case and brought to its attention. If the indictment is to be quashed, or in any other manner defeated or set aside, that is to be done by the action of the tribunal in which it may be pending. The subject is exclusively for its consideration and all the authorities require that the accused shall be taken before that tribunal for its action in the premises.

The cases in which the arrest of persons has been considered unauthorized, by reason of differences in their names, are not applicable to this proceeding; for it is governed wholly by the Federal Constitution and statute. They have prescribed the practice and mode of proceeding, and the execution of the statute cannot be defeated because the courts acting under the authority of the common law might find it necessary to observe and follow a different rule.

The question in this class of cases must be whether the Federal law has been complied with, and where that may appear to have been done, the courts cannot defeat its operations merely because a different mode of proceeding would be considered essential for the arrest of persons charged with crime under the laws of this State.

But while the warrant of the governor appears to have been

authorized, as that was required to be done by the Federal statute, it did not follow that the relator could be arrested under it. It issued for the arrest of O. A. Nubell, and it cannot certainly be said that it would authorize the arrest of Otto A. Nubell. For the person known by the latter name cannot surely be said from the identity of a part of the name, to be the individual known by the name of O. A. Nubell. That was necessarily a matter of proof.

The relator has the right to controvert the fact that he was the person mentioned in the warrant as O. A. Nubell, and by his objections to the return of the writ of *habeas corpus*, he did in effect present that objection.

What should then have been done, if the facts would justify it, was the answer that Otto A. Nubell and O. A. Nubell were one and the same individual, and that consequently the relator was the person intended to be arrested and returned by virtue of the executive warrant. This was an issue either party had the right to present and to have a judicial determination of his identity with the person whose arrest was authorized by the warrant. And by section 2039 of the Code of Civil Procedure the court was not only empowered, but required to make that investigation. That was not done, but the demurrer was overruled and the writ of *habeas corpus* dismissed.

This direction requires to be corrected. The order should be reversed and an order entered sustaining the demurrer, with liberty to the respondents to amend their return by adding the statements, and establishing the fact by proof, that the relator is the same person named in the warrant under which he is now held in custody. And in case that proof shall be made, then it will follow of course that the writ should be dismissed and the relator returned to the State of Illinois.

Davis, P. J. and Brady, J., concurred.

Order dismissing writ of *habeas corpus* reversed, relator returned to custody under the execution warrant, and hearing directed to proceed as to identity of relator with the person named in the warrant.

In case such identity shall be established, the relator to be then delivered, as directed by the warrant, to the State of Illinois. If it shall not be established then the relator to be discharged from custody.